```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY

ROBERT TATE                      :    CIVIL ACTION
                                 :
         v.                      :
                                 :
PHILLY SHIPYARD, INC., et al.    :    NO. 19-5076
```

MEMORANDUM

Bartle, J.                                        April 16, 2020

Plaintiff Robert Tate ("Tate") brings this action under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq., against defendants Philly Shipyard, Inc., Greg Tucker, and Keith Russel (the "Shipyard Defendants"), as well as against defendants Signal Mutual Indemnity Association, Inc. and Karla Carney (the "Signal Defendants"). Plaintiff also alleges state law claims of negligence and illegal practice of law. Before the court are the separate motions of the Shipyard Defendants and the Signal Defendants to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiff has failed to state any claims for relief.

I

When deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir.

2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claimant must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  On a motion under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

II

The factual allegations in the complaint are taken as true for present purposes.  Tate was injured on November 3, 2016 while working for Philly Shipyard, Inc.  He was throwing scrap metal into a recycling bin at the time.[1]  His employer's safety

---

[1]  Tate does not provide his job title or responsibilities in the complaint.

coordinator sent him to the emergency room that night and for physical therapy the following day. The physical therapist placed Tate on modified duty with no lifting more than 20 pounds and no crawling or climbing ladders. Another healthcare provider modified these restrictions on December 12, 2016 and recommended Tate avoid "repetitive, bending, stooping, kneeling, squatting, [and] climbing below waist level."

Despite plaintiff's request for light or modified jobs and the work limitations directed by the healthcare providers, "none of the Defendants ever discussed light or modified jobs and remained silent to his suggestions." In addition, the Signal Defendants "failed to notify [Philly Shipyard, Inc.] of the medical necessity of providing the light or modified job duty for Plaintiff."[2]

At some point Tate filed a grievance with his union, after which he alleges he was harassed. Tate was "placed on intermittent FMLA leave" on July 26, 2017 and "forced out of work" in connection with his injury on November 1, 2017.[3]

---

2. The complaint never explains the relationship between the Shipyard Defendants and the Signal Defendants.

3. Whether Philly Shipyard, Inc. terminated Tate's employment is not stated in the complaint.

The complaint further alleges that the Signal Defendants "took on the duty to provide the medical treatment for [plaintiff] and exclusively controlled access of that medical treatment including the available providers," and "knew or should have known of the work limitations imposed upon [plaintiff] by his medical providers." According to Tate, the Signal Defendants told him that the work limitations would be provided but they were not. The Signal Defendants also failed to advise the Shipyard Defendants of the work limitations.

Finally, Tate alleges that defendant Carney counselled him about his duties and obligations under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 928, et seq., and never advised him about the necessity for preapproval to "obtain further medical treatment" or suggested he obtain legal advice. Carney further did not advocate for light duty for Tate and in the interest of the defendants denied him medical treatment as well as a workers' compensation payment.

III

Employers subject to the requirements of the FMLA must provide up to 12 weeks of leave during any 12-month period for eligible employees who suffer a serious health condition that renders them unable to perform their job functions. 29 U.S.C. § 2612(a)(1)(D). Employers are prohibited from discriminating against, interfering with, retaliating against or discharging

employees for having exercised or attempted to exercise their rights under the FMLA.  29 U.S.C. § 2615.  The FMLA also protects employees who oppose or complain of conduct made unlawful by it.  29 CFR § 825.220(e).  The FMLA provides employees with a private right of action against employers who violate the FMLA.  See 29 U.S.C. § 2617.

Claims brought under the FMLA take two general forms. Employees may bring claims against employers who interfere with their right to take leave.  See Karaffa v. Montgomery Twp., Civil Action No. 12-1184, 2013 WL 1157626, at *4 (E.D. Pa. Mar. 21, 2013).  Employees may also bring claims against employers who retaliate or discriminate[4] against them for taking leave. Id. at 6.

IV

In Counts I, II, and III of the complaint Tate brings claims under the FMLA against all the defendants for interference, retaliation, and discrimination, respectively. Each of the individual defendants and Signal Mutual Indemnity Association, Inc. contend Tate has not pleaded they are his

---

4.  Tate brings FMLA claims for retaliation and discrimination under separate counts.  These claims are both assessed through the same lens of employment discrimination.  See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012). Tate's separate claims for retaliation and discrimination will be addressed together.  See supra Section VI.

"employer" under the FMLA and therefore has failed to state an FMLA claim against them.

Employers are not the only parties who may be held liable under the FMLA. Subject to limitations not at issue here, "any person . . . who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer" may also be subject to suit. 29 U.S.C. § 2611(4)(A)(ii)(I); see also 29 C.F.R. § 825.104(a) and (d). Accordingly, suit may be brought against individual defendants and separate entities which act on behalf of an employer towards its employees. Hodgson v. Arnheim & Neely, Inc., 444 F.2d 609, 611-12 (3d Cir. 1971); see also 29 U.S.C. §§ 2611(8) and 203. Whether such a defendant may be subject to suit under the FMLA depends not on "technical concepts of the employment relationship," but "the totality of the circumstances." See Haybarger v. Lawrence Cty. Adult Prob. & Parole, 667 F.3d 408, 418 (3d Cir. 2012). Critical to the analysis is whether a defendant "exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." Id. at 417.

Tate alleges in the complaint that the Signal Defendants "took on the duty to provide the medical treatment for [plaintiff] and exclusively controlled access of that medical treatment including the available providers," and "knew

-6-

or should have known of the work limitations imposed upon [plaintiff] by his medical providers."  Neither this nor any other allegation in the complaint indicates whether the Signal Defendants exercised supervisory authority over Tate or were responsible for any decision to terminate him.  Moreover, reviewing the complaint as a whole does not permit these inferences.  Tate has not pleaded sufficient factual matter to state a plausible FMLA claim against Signal Mutual Indemnity Association, Inc. or Karla Carney.

Tate's only allegation as to individual defendants Greg Tucker and Keith Russel is that they were, at all relevant times, servants, agents, or employees on behalf of Philly Shipyard, Inc.  The complaint is similarly insufficient to support an inference that these defendants exercised supervisory authority over Tate or were responsible for any termination.

For these reasons, we will dismiss Counts I, II, and III of the complaint as they relate to Signal Mutual Indemnity Association, Inc. and individual defendants Karla Carney, Greg Tucker, and Keith Russel.

V

In Count I of the complaint, Tate brings an interference claim against Philly Shipyard, Inc. for refusing to

provide modified duty work thereby forcing him to take FMLA leave.[5]

To succeed on an interference claim under the FMLA, a plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017).

Unlike the Americans with Disabilities Act, the FMLA does not entitle an employee to workplace accommodations. Thomas v. St. Mary Med. Ctr., 22 F. Supp. 3d 459, 474 (E.D. Pa. 2014). To the contrary, "the leave provisions of the [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the [ADA]." 29 C.F.R. § 825.702(a). Workplace accommodations are not a benefit to which Tate is entitled under the FMLA. Tate's FMLA claim that Philly

---

5. Plaintiff also includes the other defendants under Counts I, II, and III. Since the other defendants have been dismissed due to Tate's failure to indicate whether they exercised supervisory authority over him, we limit the analyses to the motion of Philly Shipyard, Inc. to dismiss these counts.

Shipyard, Inc. improperly refused to provide such accommodations therefore fails as a matter of law.

In Count I, Tate also appears to bring a claim against Philly Shipyard, Inc. for forcing him to take FMLA leave. Our Court of Appeals has yet to recognize an involuntary leave claim under the FMLA. Keyhani v. Trs. of Univ. of Pa., Civil Action No. 173092, 2019 WL 2568279, at *7 (E.D. Pa. June 21, 2019). In any event, even where a court has recognized a cause of action for involuntary leave, it has done so only where an employee is forced to take FMLA leave despite not having a serious health condition. See Wysong v. Dow Chems. Co., 503 F.3d 441, 449 (6th Cir. 2007). Tate alleges he was placed on intermittent FMLA leave because of medical issues caused by his injury.

For these reasons, we will also dismiss Count I of the complaint as it relates to Philly Shipyard, Inc.

VI

Tate brings separate FMLA claims for retaliation and discrimination against Philly Shipyard, Inc. in Counts II and III of the complaint. He asserts it forced him out of work after he took FMLA leave and filed his union grievance. We address Counts II and III together. See supra n. 4.

To succeed on a retaliation claim under the FMLA, a plaintiff must establish that he or she: (1) "invoked [the] right to FMLA-qualifying leave"; (2) "suffered an adverse

-9-

employment decision"; and (3) "the adverse action was causally related to [the] invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012). Retaliating against an employee for complaining of conduct made unlawful by the FMLA is actionable regardless of whether the conduct complained of is prohibited by the FMLA.  An employee need only "reasonably believe [the conduct] to be a violation of the [FMLA]."  29 CFR § 825.220(e).

Tate was injured on November 3, 2016.  Sometime after, he filed a union grievance in connection with the refusal of Philly Shipyard, Inc. to provide him modified work duty.  Tate alleges he was harassed for filing the grievance.  He took FMLA leave on July 26, 2017.[6]  His employment ended on November 1, 2017.  The complaint does not otherwise specify the conduct suggesting a causal connection between the end of Tate's employment and his FMLA leave or the union grievance.

Temporal proximity between an employee's termination and a protected activity may permit an inference of causation in the absence of specific conduct.  See Lichtenstein, 691 F.3d at 307.  Moreover, the passage of time is "not legally conclusive proof against retaliation."  Krouse v. Am. Sterilizer Co., 126

---

6.   Tate does not state when the leave ended.

F.3d 494, 503 (3d Cir. 1997).  At this stage, the allegation of temporal proximity is sufficient.

For these reasons, we will deny the motion of Philly Shipyard, Inc. to dismiss Counts II and III of the complaint.

VII

In Count IV, Tate brings a negligence claim under Pennsylvania law against the Signal Defendants.  Specifically, he claims that the Signal Defendants were negligent in not notifying the Shipyard Defendants of his need for workplace accommodations which resulted in him being forced out of work.

To establish a claim for negligence under Pennsylvania law, a claimant must show: (1) "the defendant owed a duty of care to the plaintiff";  (2) "that duty was breached";  (3) "the breach resulted in the plaintiff's injury"; and (4)  "the plaintiff suffered an actual loss or damages." Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009).  Tate fails to plead any plausible basis to support a claim that the Signal Defendants assumed a duty to report any work restrictions to his employer.  He does not state a claim for negligence.  Count IV will be dismissed.

VIII

Tate claims in Count V of the complaint that defendant Karla Carney – "a servant, agent or employee on behalf of"

Signal Mutual Indemnity Association, Inc. - is liable for damages to him for the "illegal practice of law."[7]

Specifically, Tate alleges that defendant Carney: (1) "counseled [him] of his duties and obligations under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 928 et seq. but only for the benefit of Defendants SIGNAL and Philly Shipyard"; (2) "never suggested he seek legal advice"; (3) "did not notify [him] that pre-approval [for further medical treatment] was necessary"; (4) refused to "discuss [a] change of his physician"; (5) "did not advocate for the light/modified work duty"; (6) "denied medical treatment"; and (7) "denied [his] workers' compensation payment." Carney contends that there is no private cause of action under Pennsylvania law for the recovery of damages which result from the illegal practice of law.

The unauthorized practice of law is a criminal misdemeanor in Pennsylvania. See 42 Pa.C.S. § 2524(a).[8]

---

7. The complaint does not specifically identify the position Carney had with Signal Mutual Indemnity Association, Inc.

8.     42 Pa.C.S. § 2524(a) provides:

> [A]ny person . . . who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any

Injunctive relief may also be awarded against a party engaged in the unauthorized practice of law.  42 Pa.C.S. § 2524(c).[9]  The unauthorized practice of law is also a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq., which provides an action for damages for its violation.  Id.; 73 P.S. § 201-9.2.  Therefore, it appears that an action for damages which result from the unauthorized practice of law does exist under Pennsylvania law.

Under the Constitution of Pennsylvania, the courts have the exclusive authority to regulate and determine what constitutes the practice of law.  Harkness v. Unemployment Comp. Bd. of Review, 920 A.2d 162, 166 (Pa. 2007).  What constitutes the practice of law is not capable of a comprehensive definition.  Id.  For this reason, Pennsylvania courts do not

---

language, in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law . . . commits a misdemeanor of the third degree upon a first violation.

9.   42 Pa.C.S. § 2524(c) provides:

In addition to criminal prosecution, unauthorized practice of law may be enjoined in any county court of common pleas having personal jurisdiction over the defendant. The party obtaining such an injunction may be awarded costs and expenses incurred, including reasonable attorney fees, against the enjoined party.

endeavor to apply broad rules and instead determine what constitutes the practice of law on a case-by-case basis.  Id.

Consideration of the public interest is paramount to this inquiry.  Id. at 166.  The Pennsylvania Supreme Court has considered two related aspects of the public interest to determine what constitutes the practice of law: "protection of the public and prudent regulation so as not to overburden the public good."  Id.  The Pennsylvania Supreme Court has explained:

> The threads of legal consequences often weave their way through even casual contemporary interactions. There are times, of course, when it is clearly within the ken of lay persons to appreciate the legal problems and consequences involved in a given situation and the factors which should influence necessary decisions. No public interest would be advanced by requiring these lay judgments to be made exclusively by lawyers. Where, however, a judgment requires the abstract understanding of legal principles and a refined skill for their concrete application, the exercise of legal judgment is called for. . . . Each given case must turn on a careful analysis of the particular judgment involved and the expertise which must be brought to bear on its exercise.

Dauphin Cty. Bar Ass'n v. Mazzacaro, 351 A.2d 229, 233 (Pa. 1976).

It is clear that four of the seven allegations recited above have nothing whatsoever to do with the practice of law. Four of the allegations involve things that Carney, a layperson,

did not do.  She never suggested that plaintiff seek legal advice, she did not notify him about certain preapprovals needed for further medical treatment, she refused to discuss a change of the physician, and she did not advocate for him with respect to light duty.  It is not plausible that these inactions or omissions of Carney constitute the illegal practice of law.

Plaintiff also asserts that as a representative of an insurance company, Carney engaged in the illegal practice of law when she denied him a workers' compensation payment and medical treatment.  If plaintiff was entitled to the payment or the medical treatment, Carney may have breached a contract or committed some other wrong, but this conduct cannot by any stretch of the imagination be deemed the illegal practice of law.

This leaves the allegation that Carney improperly "counseled [plaintiff] of his duties and obligations under the Longshore and Harbor Workers' Compensation Act" not for his benefit but the benefit of the defendants.  In this regard, plaintiff's pleading is sufficient to withstand a motion to dismiss.  Whether plaintiff will be able to prove illegal practice of law must await another day.